Good morning, Your Honors. I'm Michael Avakian. I'm counsel for Pessoa Construction Company. This case is back before the Court after a compliance hearing from enforcement of an order of the National Labor Relations Board. The compliance hearing was very unusual in terms of the types of evidence that was provided. The issues are explained fully in the briefs. I'm going to discuss three separate issues that I think do control the case. First of all, and most importantly, is whether or not the Board's order trenches on the Federal Motor Carrier Safety Administration regulations and highway safety that is not within its jurisdiction to describe, such as under the Supreme Court's decision in Huffman Plastic Compound. Secondly, whether the Board's refusal to suspend back pay for William Membrano when he had an uncontested medical finding of angina pectoris unstable and had lost his license to drive were valid reasons to reject the employer's refusal to reinstate him and to award him back pay for those periods. And finally, whether the application process itself that the Federal Motor Carrier Safety Administration fully regulates and provides guidance to both employers and employees on can be disregarded by the Board in a compliance action for reinstatement. First and foremost, the question of what standards should be applied by the Board and the Court in Federal Motor Carrier Safety Administrations is not an unusual one. It has happened in this Court. This Court in Collins described the process and in other cases as well that are described in the brief. But most importantly, Congress made highway safety its highest priority. Those are the Congress' words in the statute, its highest priority. And empowered, invested in the Department of Transportation and the Federal Motor Carrier Safety Administration the full right to control and regulate the commercial motor vehicles, which are trucks weighing over 10,000 pounds, on the Nation's highways. The Board has looked at the licensure requirements that the FMCSA has. It has looked at the medical requirements that the FMCSA designates and requires. It has looked at the application process that the FMCSA regulates and has looked at the benefits and hours of work that the FMCSA regulates as well. And in all cases, has disregarded the rules of the Federal agency. We think that that is an improper exercise of jurisdiction and its ruling is entitled. Can you be a little more specific? What specific rules has it disregarded in your view? Yes. First of all, the medical diagnosis rules. All the rules and regulations are in the back of the Addendum Appellants Brief, which are 391.21 and 43, most specifically. And those specifically say two things. One is it puts the burden on the employer not to allow somebody to drive who is physically impaired or has a health problem. And secondly, upon the driver himself not to drive if he has a physical impairment. And that can occur at any time. So if one has an impairment, they are knocked out and they have to get a new medical certification from a certified doctor on the medical registry. In this particular case, the regulations specifically provide for if one has essentially a heart attack, angina pectoris and other types of cardiovascular diseases, they are not qualified and they are disqualified from driving unless they get recertified. And so we have a situation where the ALJ picked up on the fact that holding a certification card presumptively means a driver can drive and should be eligible to drive. Isn't the question though when an employee has to possess the certification card? Well, one, he must possess a card and two, he must possess a license to drive. To be employed. To be employed, correct. For purposes of? Applying for employment as well? Is that in the regulation? No, it's not in the regulation. However, the regulation says if there is a disqualifying event, which is a medical diagnosis or a current clinical diagnosis of angina pectoris, that the person is disabled from driving until and then the regs stop there and then pick up and says if one has this, they need recertification. Membrano produced no DOT card for any period post-discharge until almost two years later from November of 2008 to April of 2010. We also know that, which is interesting, at the time that Membrano was discharged, he was driving on a suspended license, which the employer did not know about. In fact, he was on a suspended license for all times when he engaged in union activity as well. And he knew it and the testimony reflects that he knew it, but he didn't notify the employer, which was his obligation under the regulations as well. So the question becomes whether or not, in terms of applying the highest safety standard rules, because these are dangerous trucks and Congress wanted to strengthen the enforcement regulations and protect the public and persons in commerce, whether the Board's decision to really suspend these regulations for purposes of providing back pay to Membrano should be allowed. But your characterization assumes that he didn't have the card when he obtained employment. My question is, and you seem to agree, that the regulations don't require the DOT certificate when one is in the application process. It doesn't appear, Judge, it doesn't appear to be that way. Our argument is that Membrano was not available to work and be reinstated and be provided back pay for the period in which he had a clinical diagnosis of angina pectoris, which is uncontested. Now, almost 18 months later, he eventually gets this new designation. But the obligation to obtain the card is on the employee, not on the employer. So the fact that Membrano, two years later, decided he was going to have his new employer pay for his DOT medical certificate is not the relevant question. The question is whether or not he had a card to begin with. Where is the era of, what's the chief era of law here as opposed to the different factual matters considered by the ALJ? I mean, what's the salient point of law that you're trying to press? It's the preservation or rather the preeminence of the Federal Motor Carrier Safety Administration regulations that both PESOA and Membrano had to comply with. Just like maritime safety, the Congress gave the Coast Guard the full authority to occupy maritime safety, and that's reflected in the Third Circuit's decision in the Exxon case where it reversed, did not enforce an arbitration award where reinstatement was imposed when the employee did not have a Coast Guard medical certification and in other cases as well. And for instance, the FAA is given full authority to regulate the medical health of airline pilots. Where did the board actually, I'm still confused as to where the board actually sort of disregarded or came in conflict with the Department of Transportation regulations because as Judge Duncan pointed out earlier, the DOT card is not something that's required in an employment application. That's true. The failure to apply the entire body of that particular statute and its regulations, which is the requirement for both of the parties to have burdens in terms of protecting public safety. But you need to be more specific because I don't understand what specific regulation the board contravened. I'm just not clear about it. The specific regulation is 391.43, which is in the addendum. Now, specifically it says, the regulation says a person is qualified to drive a motor vehicle unless he has had a current clinical diagnosis of angina pectoris. The board's error here and the ALJ's error is not to apply that particular piece of the regulation to find membrano is disqualified from being reinstated. With respect to the angina, I thought he underwent a medical procedure in November of 1908 and I guess there was some sort of stint or maybe it was a bypass, I don't know. But I thought the medical evidence was that he had put that behind him and I wasn't clear as to what medical testimony you had used before the ALJ that he possessed a disqualifying illness after he had undergone that operation. Right. We introduced the doctor's community hospital report that was the intake for membrano going into the hospital voluntarily for pains that he had. And Dr. Sharma diagnosed him with angina pectoris unstable. Now, that was a document produced by subpoena that we obtained from membrano, one of the few documents we did. And it was introduced into evidence uncontested. The ALJ even discussed it in the course of the hearing, what the doctor's report actually stated. And he identifies it as a finding of fact that membrano had this diagnosis. But then he did not apply the regulation saying the diagnosis disqualified him. Now, it doesn't mean that membrano was fully disqualified for the entire period, but until he had another DOT card obtained, which he never went to get. And that's the problem here. At the point in time, and Pessoa knew it fairly soon after that occurred because he had visited their offices, and he described it as a heart attack. But we knew he had a medical problem from the very beginning. And at that point in time, it's certainly membrano could not be receiving back pay or working for Pessoa until he got a new card. How much of the back pay period was before the operation that he had? About two weeks. So he left employment, and I think about two weeks later he checked himself in. Into the hospital. So, I mean, you're talking about a fairly negligible amount of time? For that first part of the back pay period, correct, which we acknowledge. And then he gets checked in, he gets the diagnosis, and then does not get recertified, which is his requirement under Federal regulation. It's a requirement for employment. Requirement for employment. And our argument is that for back pay as well, he has to be able to get it. I understand your argument, but you seem to keep adding a layer onto the regulation that isn't there. Okay. Your Honor, I apologize if it's confusing, but I think it's pretty straightforward. It is pretty clear. Your argument is that although the regulation only speaks to having the certificate in order to obtain employment, you believe that in order to receive back pay, the employee should be ready at all times throughout the process to assume another position and therefore should be certificated at all points. Your Honor, I believe that's correct. I understand. That's your argument. Yes. Yes. So, in this particular case, Membrano could not, from the day he checked out of the hospital, two weeks later, even the Board agrees that he needed at least another three weeks of non-work before he could be eligible to go back to work without saying why that's the case. But in any event, PASOLA could not have taken him back on whatever day he decided to show up because he was not medically qualified. Now, PASOLA had no requirement to send Membrano to get a doctor's certificate because the burden is on the employee to get that, not the employer to have him get it. We see, though, in the interim employer testimony, that they sent employees to get DOT certified contemporaneously with their potential employment in order to ensure there was no intervening medical situation that might have disqualified them since they had their last certificate. The back pay period also, I think, needs to be adjusted because of the application procedures. We know specifically that Membrano testified and lied to all his employers. ALJ found that. He falsely stated his record. FMCSA specifically regulates what has to be in that. It says they have to have their employment correctly. They have to show who they work for, their medical condition, whether they had any speeding violations and damages done to their trucks, and whether they are medically qualified. And certify that as true and correct. And that's in the regulations. Membrano treated his application process very generally, and I see my time is up. And I don't think it's consistent with the federal motor carrier safety regulations. Thank you. Now I think we're ready for the NLRB. Good morning, Your Honor. May it please the Court, David Seid for the Labor Board. I'd like to take a minute to step back to place the company's arguments in context. At the very end of the company's opening argument made reference to his application process, the underlying court order enforced by this court contained a May call remedy, under which at page 69 of the company's brief and further at pages 111 and 112 of the appendix, the company acknowledged that Mr. Membrano was owed back pay from the time period where he began interim employment to the end of the back pay period. That cannot be reconciled with any attempts by the company to now question his application process. Now, with respect to the company's primary affirmative defense in the back pay period that ran from late November 2008 to April 2010, there are two key reasons why the board found that the company failed to establish an affirmative defense that Mr. Membrano is ineligible for back pay. First, as company counsel has acknowledged, there is no prerequisite that Mr. Membrano have a valid medical card when he searched for work. And the evidence indicated that when an interim employer was ready to hire him, the interim employer sent him out for a medical exam and he passed. Second. Can I ask you a question? Is that routine when a person applies for a job and they're going to be hired, that whether or not they get a physical or the company requires a physical, is that dependent on whether or not they had one in a certain – within a – Your Honor, interestingly, the record does not specifically set forth what the process is, and it would have been the company's burden as part of its affirmative defense to come forth with evidence to show that it was either the company's policy or industry policy in general that an applicant for employment already have a valid medical card at the time of application. The company did not do so here, so there is simply no evidence in the record to indicate that in a typical situation an employer requires an applicant to have a valid medical card at the time of the application. And – Could I – So does it vary? Excuse me. I mean, does common practice vary? Does some companies require you to have it and some don't? I don't know how it works. Your Honor, I can't answer that question because, again, that would have been something for the company as part of an affirmative defense to present evidence into the record as to what the policy is and to establish that in fact there is, say, such a policy that would require applicants to have a valid card with them at the time of the application. I did – I'm a little – could you help me with the – Go ahead. It's a similar question. This comes to us based on a finding of an unfair labor practice. So presumably inferences are likely to be drawn in favor of the employee with respect to the entitlement of make, hold, back, pay, as I understand it, with evidence showing that the employee is not entitled to back pay during that period. But there are facts here that would seem to be uniquely within the wheelhouse of the employee, and certainly his medical records is one of them. So how does – isn't that a somewhat uncomfortable fit with the burden of proof process that you've articulated? No, Your Honor, because as has been acknowledged, there is no prerequisite as a precondition for employment that you have a valid medical card when an interim employer is ready to hire him. He was sent out for a physical and passed. And I would suggest that common sense would dictate he went to the hospital with angina pictoris, which is simply chest pain. He had a stent put in. He admittedly did not search for work for three weeks before resuming his job search, and common sense would dictate that if this stent was working sufficiently 17 months later for him to be able to pass a physical, that it was likely working at earlier dates in the process. And the company has provided no evidence to this Court to indicate that there was any intervening medical situation that would have precluded Mr. Marimbrino from obtaining a medical card and passing a physical at any point in between the time you're searching for interim employment and when he actually was finally able to receive that employment. Does the question devolve to a practical one of who's going to pay for it? If he goes and seeks the certificate during the application process, he has to pay for it, whereas if he obtains an offer of employment contingent on having the card, the prospective employer pays for it? Is that the disincentive that would discourage him from seeking one on an interim basis? Well, two points. First, I would suggest that given Mr. Marimbrino's situation of being unemployed without health insurance, it likely would have been a financial burden for him to undergo an exam on his own. Is that a yes? I really wasn't asking you an argumentative question. I was just trying to understand the process. Right. And again, Your Honor, the board cannot speak to the process because the company has not provided any evidence in the record to indicate or to suggest that it is in any way common practice for prospective applicants to bring a valid medical card with them at the time of the application process. And absent that evidence, it is reasonable to infer that Mr. Marimbrino did all that he was required to do to submit the application, and at the time an employer expressed interest, the employer sent him off for an exam, which he passed, and obtained employment. And I'm not trying to avoid the question, but again, simply given that the company has a burden of establishing an affirmative defense, it's up to the company to establish that Mr. Marimbrino acted outside of normal protocol or normal procedures, and it simply has not done so here. Are we pushing, if we rule for you, are we pushing companies to rehire marginally, only marginally safe drivers or marginally unsafe drivers? So you say, well, we've got to hire this person or otherwise we're going to be faced with a substantial back pay award. So are we pushing companies in the direction of hiring medically impaired truck drivers and are companies going to be caught in a kind of whipsaw between the Department of Transportation regulations on the one hand and the board's back pay jurisprudence on the other? Your Honor, I understand the Court's concern. In this particular situation, there is no conflict, as Mr. Avakian himself acknowledged, trouble setting forth just what the conflict is. Mr. Marimbrino had a stent put in under the own guidelines to the Motor Carrier Safety Act. An employee can return to work as soon as one week after having a stent implanted. There's no doubt there could be medical conditions that would preclude an individual from returning to work for a longer time period. But this particular medical situation is not one of them. This is something where he had the stent put in and there's no indication that there was any subsequent problem associated with that or that he had any subsequent intervening medical condition that would have precluded him from being able to meet all of the requirements of the Motor Carrier Safety Act, which, in fact, he did by passing a physical at the proper time. Well, maybe, but, you know, if the company hires someone and they get in a serious accident on the road with a large truck that not only results in a loss of human life, but it also subjects the company to substantial liability. And so there's a bit of a difficulty in that respect. It would have been a little bit more reassuring in this case, even if the certificate is not required as a part of the application. There's nothing to prohibit the driver from getting a certificate here. It would have made things a little more reassuring. I'm just nervous about the tension between the Department of Transportation's obligation to make sure that only safe truck drivers are on the road and the NLRB's back pay jurisprudence. It seems to me that they put companies in a spot. Your Honor, again, I understand and appreciate the Court's concern. The particular medical condition that Mr. Marino encountered, which, again, was chest pain, having a stent put in under the own guidelines to the Motor Carrier Safety Act, this is a condition that someone can return to work as soon as one week. And there are also – I'm sorry, Your Honor. Well, here the concern is minimized because he has to have a certificate when he is driving. There's no dispute about whether or not he can drive, he can be employed without the certificate. The only question is whether he has to stand ready with the certificate in hand while he is searching for that job driving. So it ameliorates the concern to some extent for that reason. Well, that's correct, Your Honor, and has already been stated. When the time came for an interim employer to hire him, he passed all of the necessary medical testing for Mr. Marino to be driving a truck on the roads without any safety concerns. And unless this Court has any further questions, the Board would simply ask that the Court enforce the Board's back pay order.  Thank you, Your Honor. Reply. With respect to – Your Honors, with respect to the comments and the need to have a DOT card for purposes of even searching for work in this particular case, our argument is, of course, that he's not available to come back to work and be reinstated until he produces one. Now, the key fact is for Basoa Construction, they did not require – But he can't get on the road without a certificate, can he? That's correct. He cannot drive without a certificate. Doesn't that alleviate the concern I expressed in this particular case, is that you have some assurance that when he's on the road, he would have had a DOT certificate, and certainly in any litigation that could be used by the company as a defense. It would have alleviated a lot of problems in this case if he had gotten a DOT medical certificate after he had the diagnosis of angina pectoris. But that's – But only for you. No, for him as well, because – Well, I can understand this is someone who is looking for employment, and the question is, who is going to pay for this medical procedure? It would certainly have eliminated the argument that we're having, but it wouldn't have addressed the concern about whether or not he is medically qualified to drive when he is called upon to drive. Correct. It really doesn't answer that question, but we do know that his ability to drive is functionally disabled upon a current medical diagnosis. And that's what the regulations say. If we move to another presumption that for the Board's jurisprudence under its compliance jurisdiction, that they sort of can waive that issue. It upends employers' expectations as well. In this particular case, the NLRB compliance officer testified that that medical procedure triggered a new DOT certificate and asked him where it was. And he didn't produce it. So I think that's the important takeaway of this particular piece. But PASOA did not require, as far as procedures. The NLRB enjoys a good bit of discretion with respect to back pay, and aren't these back pay questions just loaded with factual issues, such as how diligently he searched for jobs and what the nature of the medical testimony is and how long ago and how serious was the medical condition that required an operation, how successful was the operation, what were the reasons for false statements on the job applications, how old was the felony conviction. I mean, all of these things seem to be within the province of the fact finder and really have a heavily factual undertaking. Generally, that's the case in a compliance action, Your Honor, and a lot of discretion is given to the Board. However, here where they're trying to apply, and they must apply the FMCSA regulations as to his availability to work and recognize that his physical qualifications were in play, they just cannot disregard a whole regimen that Congress established for highway safety that applies to membrano, which is what they're trying to impose their own case law dealing with normal back pay proceedings on a driver, a person, and an industry that is totally regulated by another agency. That's where they're trenching on the FMCSA's jurisdiction. And to the extent they make these factual determinations, they have to be consistent with what the legal requirements are. They should not be allowed to just skip over it and impose burdens on industry as was recognized previously. There could be tremendous ramifications if an employer is forced to put a driver on the road that is not qualified. With respect to the apparent ability to go back to work quickly in the guidelines that the Board provided on appeal, which was never in the record below, those guidelines only apply to angina pectoris stable, not unstable that membrano had. The unstable kind has different qualifications, and those required another medical examination as well. For the reasons that we've stated, we believe that the Board's back pay order should be vacated and back pay be set in the amount that we described. We agree that some back pay is awarded here, but for periods where he cannot prove his availability, it should be told. Any other questions? All right. Thank you. Thank you. We'll come down and reconcile and then go into the next case. Mr. Wright.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Allyson K. Duncan